Plaintiff is challenging today the Board of Education's decision to terminate her employment as a tenured teacher with the Chicago Public School. We are challenging the Board's decision that they failed to meet their burden of proof and manifest weight of evidence on two regards. First off, that the Board failed to prove that Ms. Atkins engaged in cause sufficient to justify her termination. And secondly, that the Board failed to submit sufficient evidence proving that the conduct Ms. Atkins engaged in was actually irremediable pursuant to the Supreme Court standard articulated in the Gillian case. The facts in this case, your honors, are really not disputed. On November 6, 2008, Ms. Atkins, at the end of the day, was handing out notes for her parents, and one of her students, E.M., was being very disruptive and unruly. He struck a female student and started running around laughing and screaming and being chased by the other student. Ms. Atkins asked for him to come to her. He ran by her. She reached out, grabbed him by the shoulder, and ran away. He took off his shirt, and he proceeded to sit down. Now, we contend that Ms. Atkins did not pinch the student. However, the Board obviously disagrees and believes that she did, in fact, pinch E.M. If she had pinched him, is that excusable? Not pursuant to the Board's policy. Is there anything wrong with that? Well, the Board has a corporal punishment policy. It's a misconduct rule 4-25 that prohibits teachers from using corporal punishment that results in the deliberate use of physical force. And they give examples of what they consider physical force, and that includes pinching, as well as slapping and pushing and choking. However, the key dispute in this case really centers around what's considered deliberate. If you look at Black's dictionary and definition of what deliberate is, it's intentional and premeditated actions. In this case, the Board made a finding that what most likely happened is what Ms. Atkins says happened. Isn't there a dispute of fact here, then, whether there was a pinch or wasn't a pinch? Yes. You said the facts are agreed upon, but they're... They're mostly uncontested, except for that point. That's correct, Your Honor. Okay. So what's the standard of review we should be applying here? This would be a manifest way of the evidence standard. Okay. Thank you. Okay. Well, going back to what you just said, there's an issue raised in the blue brief about 34-85, and which would take it out of, as I mentioned, negligence. Negligently is a possibility. In any way, it causes psychological or physical harm. So even if she negligently grabbed the child by the shirt and caused the injury, under 34-85, it would seem to me that that would be a cause, make it irremedial under the statute. That's if she acted negligently or if she was engaging in a proper use of physical restraint on a student. And in this case, grabbing an unruly student to get him to calm down would be a proper use of physical restraint. As to the argument that this is irremediable per se, the school code I believe the board's arguing that she engaged in cruel conduct that resulted in harm to the student EM. It's really not been dealt with what's meant by cruel under the 1995 amendments. However, if you look back at past cases in which I cited to, they've identified cruel conduct as conduct that is severe, premeditated, and they give examples of a teacher who used a cattle prod on his students and a teacher who slapped a female student 10 to 13 times, causing her to bleed from her mouth. But there are commas, right? So it's in the disjunct, which is cruel. This is not cruel. Immoral, it's not immoral. Negligent or criminal, or which in any way causes, in this case, physical harm. I know this argument is psychologically harmful. A little shaver, you got to grab, and he has a welt on his chest. So negligent or criminally causes physical harm. So to understand, the Board of Education, when they made their decision, did not find any kind of harm that was caused to EM, physical harm that is. They inferred and presumed that EM was psychologically harmed by what happened and that there was possible harm given to the school as well based upon this conduct, as well as other students in the classroom having witnessed this. And that gets me to my second point in Gillian. If this is not considered irremediable per se conduct under the 1995 amendments, then you'd have to look to the two-prong test established in Gillian. And the first prong is conducts are remediable if there was no damage caused to the students, the school, or the faculty. And case law in the public court has held that this degree of damage has to be more than just presumed damage or inferred damage. Cases of Hagener and Kent Morris being examples. And in this case, what the hearing the board did was they presumed that damages must have occurred to the faculty, to the school, based upon what Ms. Adkins did. That's specifically what the appellate court said it cannot do. But the board didn't find specifically if there was no physical contact or injury, correct? They didn't determine that. No, they did not determine that. No. So their determination was relevant to the physical was what? The grabbing of the shirt. But they didn't say that there was any actual, the hearing office didn't say there was actually any pinching. Well, this Mrs. Thompson, Ms. Thompson was a witness. Correct. And she was clearly very positive of witnessing your client's pinching his chest while she was holding the shirt. And then some other witness testifies to a red mark on his chest. So there's clear evidence that there was a pinching. What Ms. Thompson witnessed was Ms. Adkins grabbing a shirt. She didn't see any skin in Ms. Adkins' hands. And as to the red mark. The testimony is she saw Adkins with her hand on EM's chest pinching him with his shirt. He went down to the floor. She pinched him. He cried out and screamed out. Later on, there was a photograph of someone saying there's a light red mark on his chest. Officer Wilborn. Officer Wilborn observed a red mark on his chest. And then they also took photographs of the mark as well. And both Mr. Wilborn. So given that, what was wrong with the board's decision then? Excuse me? Given that, what was wrong with the court concluding that there had been corporal punishment and dismissal was in line? Based upon the fact that the young man never testified as to anything occurring. He never showed up to testify. And as well as Ms. Adkins testifying that she never pinched him. And if she did so, it was by accident. And under the board's rules, accidental conduct is not deliberate conduct. And they have specific rules that don't require dismissal for certain instances of corporal punishment, as well as certain instances of physical restraint. Do you have anything else? No. Okay, well, thank you. We have plenty of time for reply. Thank you. We'll hear from Ms. Louder. Your Honors, may it please the court, counsel. The board rules say that any conduct that causes, that's cruel, or that causes, in any way causes physical harm to a child is irremediable per se. And this certainly qualifies. Because as you stated, Principal Thompson said that she saw Ms. Adkins pinch this child until he dropped to his knees. And then she and the security officer, Mr. Wilborn, observed that he had a red mark on his chest. That's physical harm. This court's case in 1981, the Board of Education versus the Illinois State Board of Education, determined under the Gilliland standard that corporal punishment is harm to a child. It meets the first test, the first Gilliland test. And it meets the second Gilliland test as to would any kind of warning have been useful, because we already have a rule that says we prohibit corporal punishment. So why do we need to warn someone when two weeks, two months before this, she'd already been warned about corporal punishment. And here she is two months later engaging in corporal punishment again. I think under the Board of Education versus ISBE, this case is fairly easy. Because I think we've proved that. Well, you have a teacher of 34 years, 28 in public, six a Catholic. What is she supposed to do with a six-year-old who's running around screaming, shoving other children? There are a lot of things that people can do. You can give him a time-out. Okay, so he's running around screaming, time-out, time-out, right? Doesn't she have to get his attention? She would get his attention by saying time-out? She doesn't get his attention, I don't think. We don't want our teachers to get his attention by grabbing him by the chest. Right, so she should yell time-out and maybe he'd stop. That's your theory. Anything else you can think of, Ms. Waters? Maybe he wouldn't. So maybe she'd need to stand up and sort of herd him to stop. Without touching him, of course, because that would be a firing offense. So she should herd him like a sheepdog with a sheep as opposed to touching him so that he'll get in trouble. We don't want our teachers to touch kids. We don't want them to corporally punish kids because it's a huge liability issue for the board. I understand the principles behind it. I'm just saying. What can she do? You would hope she's had this child at this point. She had him for a half of year in kindergarten. She'd already had him for, what, three months? You would hope that she'd have enough, if she were a decent teacher, that she would have some authority to say when I tell you to stop running, you're going to stop running. Has it been your experience with the six-year-olds? I've had several, including my own. And they might be afraid of me or my wife, but, you know, I've been around the block more than a couple hundred times. And so your belief is that it's the fault of the teacher when the kid's running around screaming, hitting other kids? That's odd. I don't know if I buy that at all. Okay. I'm not saying it's her fault. I'm saying she needs to have a way of dealing with kids' misbehavior that's not corporal punishment because the board rules clearly prohibit that. So she's been a teacher for 34 years. Is this the best she can do, pinch someone in the chest? To grab them as they're running by. I mean, I'll be honest. I went to Catholic school, so the phrase would be beaten religiously. And they meant it. And it worked out hopefully fairly well. I don't think it does work. I don't think that we want to. I'm not suggesting the public school system adopt that. I am not. Please, don't. I hear a lot of people say that. And I read all the incident reports of teachers who physically punish children. And we have an epidemic of violence in Chicago. We just joined an amicus brief in the federal court against the aggravated assault statute. And I asked for the statistics. How many Chicago public school students have been killed so far this year? Just so we could add it to our amicus brief. 17. And 193 have been injured. And I'm not by teachers. I understand. But teachers have to be role models. Teachers have to be role models as to a different way to act. I mean, what kind of moral authority does Ms. Atkins have to say don't hit that kid when she's pinching the kid until he drops to his knees? What's her moral authority to say Mike doesn't make right? We have to teach children that there's a different way. Well, again, if I understand it now in having read the briefs and listening to the arguments, they didn't say, right, that they could have found, going back to the hearing officer now, the hearing officer could have found that was correct, that she absolutely pinched the child, that she caused a welter to the child. There was evidence to support that finding. They didn't make that finding, did they? They made the finding, rather, that there was no physical harm but rather some perceived psychological harm apparently. So that would lead me to believe that they didn't believe there was a welter. I would have believed there was a welter because two people testified there was a welter. But this Court can review de novo, right? And this Court can affirm on any basis that's in the record. And I would suggest, like you did earlier, that negligence under 3485 is enough for irremediable per se. There isn't any case law in that, and it's really interesting. Well, what if this was a negligence? I mean, here's a rough kid. He's running past her. She reaches out. Let's assume, and notwithstanding the prior warnings from two weeks before, this rough kid is running by her. He reaches out, grabs his shirt, and not negligently but inadvertently causes a brush with his skin, causing a little red mark. I don't think this is a bad kid. This is a 6-year-old. Well, he's a rough kid. If I said bad, I don't mean that. He's rough. No, he hit a girl. And she tries to make him sound like a criminal by saying she had written him up and other people had written him up, but there was nothing in the record to show that that was the case, that he had been written up. This is a 6-year-old, and I think it's – No, I said written up two weeks before. I'm talking about Atkins. But Mrs. Atkins said he's a bad kid who's been written up by a lot of different people. So I think that must be where you get the idea that he's a bad kid. I didn't say bad. I said rough. A rough kid. A rough kid. Nobody's contesting that he was a rough kid. I was a teacher. I taught from kindergarten to eighth grade in special ed kids. And let me tell you, there are good kids and there are rough kids. There are rough kids. And is the way we teach those kids not to be rough to be rough toward them? Does that make any sense? I don't think it does. I mean, if we're going to tell kids might doesn't make right, we're not going to be physical with each other, then how can a teacher have any moral authority if she engages in that kind of rough conduct herself? Counsel, can I ask you on the issue of remediability? The history of the actions of this teacher on prior occasions, I'm not clear as to the allegations as to the allegedly threatening a child to beat him or her, poking a fingernail, verbal altercations. Were those all the same incident? Are those separate incidents? Those were different incidents where she did poke a child. She told him that she was going to whip his ass. And so those were, I believe, separate incidents. But we're talking about five separate incidents or one that had all these things involved in them? No, I think that this was several different incidents. She was insubordinate and she, let me see for sure. She was late. Excuse me? She was late. I'm just not sure from reading it how many different things we're talking about. Some included there were two or three events that occurred in one incident. I think there were three or four. I mean, she poked a fingernail into a child. She had a verbal altercation with a 10-year-old. She shouted for no apparent reason at all the children in her class. And she didn't follow directions. I think that's more than one incident there. No, no, but those are all separate and distinct incidents. Yes, and she was suspended for 10 days for that, before she was taken out of the classroom for pinching Elijah. Okay. Counsel, what's the standard of review here? If it's irremediability is a fact question. So it's against the manifest weight of the evidence. It's not up to you to look at what the board, to second-guess what the board did. If there's evidence in the record to support what the board did, you're supposed to affirm it. And that's what I'd ask you to do. Affirm that we should fire Ms. Atkins for engaging in corporal punishment of this 6-year-old child, Elijah. Don't go anywhere yet. They cite Ms. Atkins' attorney. It cites the idea. You bring up 30485 in your brief, and they point out that's the first time that this was brought up in this case. Would you agree with that, that this is the first time? No, Your Honor, I wouldn't. I checked that, in fact. In our brief, on pages 8 and 11, we did bring up the Youngie case, irremediable per se. You do, indeed. But that's my point. Was that raised in front of the trial court? Their complaint is that you should have waived 30485, although I don't know how we could say that. I think it's accurate. My question is, is it accurate that 30485 was specifically not mentioned by the hearing officer, nor by the circuit court judge in this case? Is that correct? I believe if we were to waive it, it would be whether it was mentioned in our briefs. And it was mentioned in our brief before the hearing officer and in our brief before the circuit court judge on pages 8 and 11. I just bring it up because if you look at the Youngie and Ahmed, both of the appellate court cases in both of those point out the hearing officers didn't mention it at all, 30485. Right. So apparently if people – are they in your employee, or who employs the hearing officers? No, they're not in our employee. They're an Illinois State Board of Education's employee. And what happens is they give each of us five names, and we strike. They strike first, and then – so we don't – I'm not blaming you. I'm just saying it would seem to me that somebody should talk to those people and suggest to them that they follow the law, that at least that they mention the law. We have to do that, whether we follow it. It can be argued by the losing side all the time. But at least they should mention the law. So you have this statute, 1995, which has been ruled on in 2003 and then later in Ahmed, saying the statute is pretty clear. It's a cut – you know, cut their heads off. It's irremediable. It's a pretty strong fire – to affirm firing terminations. And yet the hearing officers don't seem to be aware of it at all, even though it's in your briefs. I, you know – It is a – it's frustrating to us, too. Okay. And I think it's clear from the – if you look at those cases that counsel cites in his brief, there were some really horrendous sorts of abuses that were happening up to that time. So it's clear to me that that statute was enacted in response to those cases. I was just suggesting Eli Johnson. They seem to me they tortured the kid and he was put back – that person was put back on the job. But then the legislature said to the appellate court, cut it out. That, by the way, you're not to reinstate these people. I think that's what was happening. The drawback thing, though, while they beat Eli Johnson, they certainly didn't beat this kid. No. And so – But the statute says in any way causes physical harm or injury. It seems to me that there are two different things there. There's harm if a kid has a red mark on him. I don't think any of us would argue that that wasn't harm. And I would argue that it's cruel, although you don't believe it is. No, to grab kids is not cruel. To grab kids until they drop to their knees and cry, isn't that cruel? You're assuming that the child dropped to his knees because he was being pinched so severely. And I'm suggesting a very common reaction, again, having had kids, is that he dropped to the knees because you grabbed him. Ah, you're going to have to carry me then. You know, there's a lot of reasons kids fall to their knees. And, again, we're stuck with the record here, and I don't buy it at all that that kid – neither did the hearing officer didn't say, oh, and the kid dropped to his knees because he was in such pain from his horrible welt. He didn't say that. So we don't have that in this case. So going back to the statute, 3045, so any time there's a welt – let's – there was a welt, even though the hearing officer didn't find it. So any time there's an injury – so let's suppose instead this young fellow, instead of having just shoved a child and was running around screaming, which is what apparently everybody agrees he was doing, suppose he was still grabbing the other child and banging the child's head against the blackboard. And Mrs. Atkins grabs him off of her – grabs him physically by his shoulders and drags him away from the little girl. And, you know, he has welts on both his arms. Fire and offense. I think that that's not punishment, right? That wasn't done for punishment. And also, we actually have – we have a policy on physical restraint that says if you're going to restrain kids to stop them from hurting other children or other staff members, you do it that way. But you don't grab someone by a joint. You grab them by – you know, take them by the shoulder and move them away because we don't want kids to get hurt. And we don't have an argument here that this was physical restraint, right? Mrs. Atkins not saying, by the way, I was following the Chicago school board's rules about physical restraint. Well, I think she is trying to say that, isn't she? She's saying, I was just trying to keep him from running. I was trying to restrain him from running so I could put the notes out. Yes, I think that's what she was doing, frankly. But I don't see any argument in it. I don't see the briefs saying, by the way, and here's our – unless I'm wrong, did anybody cite the rules on restraint, physical restraint, in the briefs? No, because I don't think that's what she was trying to do. So we didn't cite that. Which I don't mind. I understand it's not the job of the appellee to say, oh, by the way, here's another issue that we think hurts us. That's not your job. That's not your function. This is a trial by combat, essentially, up here. So anything else? Counselor, can I ask you about the showing of psychological harm? Was there any? Well, the hearing officer assumed that there was because there's a room full of six-year-olds. I don't know. I remember being a six-year-old. I was terrified even. I was so afraid of the teachers and so afraid. So think about being a six-year-old and seeing your classmate, you know, I mean, we can argue about that, but being pinched until he falls to the ground, isn't that going to cause some harm to those kids? Are they going to be afraid in the future to come to school and think? I don't know. Maybe this was a child that acted up on a regular basis and they were happy to see this child being put in its place. But I don't know what's in the record to show that there was psychological harm. It's an inference, I believe. But we don't have to show psychological harm. We can show physical or psychological harm. And I think it's clear we showed physical harm here. Thank you. Thank you. Mr. Hale, briefly. I don't believe I need to rebut anything that she said unless you have any further questions for me. Thank you, Mr. Hale. All right, thank you. This case will be taken under advisement. This Court will be adjourned.